Good morning, may it please the court, A. U. S. A. Donovan Kokus on behalf of the United States. I'd like to reserve three minutes for rebuttal, if I may. The only question before this court is whether district courts have the inherent power to dismiss with prejudice grand jury indictments simply because two pettit juries can't come to a verdict. That question, like all questions regarding the scope of the district courts inherent power is reviewed de novo, so said Judge Becker in Holland v. New Jersey Department of Corrections in 2001. Is there any point, as I was kind of analogizing in my own mind to the statute of limitations and this, the district court did not find any prosecutorial misconduct. Correct. And in your brief, I'm not sure if you read the brief or not, but the brief by the Commonwealth, I think four times talks about the strong case and one time I think the brief said the very strong, incredibly strong case the prosecution had. The jury didn't see it that way. I know that's not the issue here, but I guess what I'm getting at, does there ever come a point where the number of retrials, based upon no evidence at all, constitutes a deprivation, a constitutional deprivation on the part of the defendant? You're right, I think there would. It would be a constitutional deprivation, but not something that could be remedied through inherent powers. And I can give Your Honor five different ways that the defendant could argue that, if there comes a point. I don't think we're there yet. Okay, I understand, but give me those ways. Okay, so for example, in Barkus' Supreme Court case in 1959, the Supreme Court said there may come a point where multiple prosecutions become so harassing that those violate due process. In this case, there was never an argument or even an insinuation that we were prosecuting Mr. Wright to harassment or that we'd reached any point of harassment yet, but that would be one. Is that something that has to be intentional? If the number rises to the level that it equates to a harassment, does it matter if the Commonwealth was driven only by the U.S. Attorney here, not the Commonwealth, but the government is motivated only by so-called law and order interests in prosecuting crime? Well, I don't know, Your Honor, because we just don't have cases that deal with this. I mean, the Barkus case I just cited dealt with multiple sovereigns prosecuting a defendant for the same act, but I'm just arguing or pointing out that that potentially could be extended to this. Maybe even take the Russell Supreme Court case from 1973, which says government conduct may become so outrageous that it's fair to bar the courtroom doors to it. No argument that our conduct here has been outrageous or even improper. Maybe even under this court's Schoolcraft decision from 1989, a defendant could argue vindictive selective prosecution on the theory that, hey, you are re-prosecuting, you are re-trying the case way more times than you would have against other similarly situated defendants. Again, no argument about that. The district court's order never once mentions due process or the Fifth Amendment. It's all strictly about the court's inherent powers. One is related to the other. To get at it, one, you could try to get it free of something of a due process issue or a procedure of a due process claim. But could the court, being concerned, I'm not suggesting this is what happened here, but maybe, could the court have a level of concern which would justify it or motivate it, justify however, because then I know your answer is going to be no, but motivate it to intercede at a point where the court believes that there's something very unfair. Maybe not to the level of a due process violation, be it substantive or procedural, but there's just something wrong. It's a dead test. It's long like a duck, it's cracked like a duck, it's starting to smell like a duck. And so the court decides on its own that since there's no new evidence being introduced, this wasn't a case of 11 to 1, and I know the court didn't consider it in its opinion, but we're not talking 11 to 1 with one counsel to the juror. It doesn't create a jury nullification. Your whole case is built around police officer testimony, which apparently is not very credible. So the countless of the judge decides whether they're letting this continue, and some prejudice to the defendant looking at 15 years in prison if convicted, and I'm just going to step in and put an end to it. I think it has to reach the level of a constitutional deprivation or a procedural misconduct. That was this court's decision in Santini in 1992, which is still good law, says that. That it's improper for a court to intrude on the decisions in the prosecutorial domain unless those decisions either amount to a constitutional deprivation or a prosecutorial misconduct. And the key word there is decisions. All the evidence that made the out-of-courtroom decision, which we're entitled to do, in fact responsible for doing under Article 2, to retry this case following a hung jury. And so based on that, I mean, because of the Article 2 implications, I think the court needs something stronger than just its personal notions of fairness to do this. And in fact, in Hastings, the Supreme Court sort of alluded to that concept. Would you agree? I would agree, yeah. In fact, I mean, I think the defendants have a point when they're saying Hastings may not be an exclusive list of the purposes for which inherent powers may exist, but then subsequently in Williams in 1992, the Supreme Court said, well, okay, but Hastings deals strictly with district courts' ability to control their own procedures. And that, I think, dovetails with, in bank courts' sort of taxonomy and ish about the categories for inherent power. So we don't have, the ability to dismiss an indictment following hung juries is clearly not within Article 3's bailiwick. It's clearly not essential to all the other powers. And I don't think it's of an order of magnitude so much greater than all of the useful-to-have type powers, but I don't think you could put it within that category. So even though the Ninth Circuit, for example, has said in bank, in, I think, W.R. Grace, well, you know, we're going to not hold Hastings to that list. The particular inherent power that the in-bank court recognized was the power to order the government to disclose witnesses. That clearly falls within the third category, at least, of ish. This is just simply nothing like that. Can you just address Rule 31, which is, I guess, the main part of your argument? I'm sorry, Your Honor? Rule 31, which is the main part of your argument. Can you address that? Yeah. So the way I read Rule 31 is that two things happen. It's two sentences. The district court can grant a mistrial if the jury is unable to agree. That happened here both times. Manifest necessity. The defendant never objected to a mistrial either time. Neither did we, for that matter, although we might have had we known this was a possible consequence. So mistrial was granted. Properly, no dispute of that. And then the second sentence is the government may retry on any count in which the jury was unable to agree. The way I read that syntax is the only leave of court we need is the original decision to grant the mistrial. As long as that's proper and there's no dispute that it is, then we may retry the case based on our discretion. And your position is it can be retried as many times as the prosecutor believes appropriate, so long as it doesn't violate due process, constitute outrageous government conduct. Yeah, so prosecutorial misconduct even. I didn't see you going that far. Are you putting it that far? As long as there's no prosecutorial misconduct, we face prosecution. You can retry him as many times as you want to with no new evidence, none or nothing. Well, prosecutorial misconduct I'm thinking of is a category separate and apart from a constitutional issue. Take that out of it. Because your answer surprised me. I'm sorry? Your answer surprised me. So forget prosecutorial misconduct for a second. You're saying that there's no limit whatsoever, barring prosecutorial misconduct, to the number of times the government can retry somebody following, and that will be more complicated, a closely divided jury that can't make a decision in the declaration of a mistrial. Well, no, your Honor. As I mentioned before, I think it's also true that it may become unconstitutional at some point. So apart from prosecutorial misconduct, there may be, you know, remember Barkis, which I mentioned, Schoolcraft, Russell. All of those may be other avenues. I can even, as I'm standing here, one more occurs to me, which the defendant could make a Sixth Amendment argument that he's being deprived his constitutional right to a speedy trial. That sounds a little out there, except I happen to know the Third Circuit has yet to weigh in on where the responsibility lies for delays caused by mistrials. So is it your position then the court can't use its inherent authority to act as a limitation on Rule 31's permission to allow the government to try their cases? Correct. It's got to be a constitutional, it's got to be a due process problem primarily, or some kind of misconduct of sorts. Correct. Perhaps even, you know, like a failure to prosecute, you know, foot dragging, that kind of thing. But it's our position the court doesn't have the authority to do otherwise. Right. So when you talk about speedy trials, what you're talking about constitutional speedy trial violations, and we have that covered in Rule 48. Correct. Yeah, correct. And see, the reason I read Rule 31 that way is it would have been the easiest thing in the world for the judicial conference to add at the second sentence, the end of the second sentence of 31b3, comma, with leave of court. That's what it does in Rule 31. You've never been in one of those meetings, have you? The easiest thing in the world. No, no, no. Putting that comma would have taken about two and a half years. Well, but regardless, Your Honor, I mean, we apply the statutory, the maximum statutory interpretation of exclusio munis to this. The Leatherman Supreme Court did apply it to the federal rules in 1993. I think we have to assume that because the statute, because the rule rather, Rule 31, prescribed a particular manner of operation, omissions are deemed to be exclusions here. There's no evidence to the contrary. The other thing I'll mention in the course of this is I was reading something from Oliver Wendell Holmes, Justice Holmes, who had said something like a page of history is worth a volume of logic. Here I think the history is quite telling because we don't have, you would expect, I would think, to find a lot of cases, especially early on in the Republic, where courts were reaching out and using this inherent power that existed. And I think that's because pre-1967 in Chapman, when the harmless error rule becomes a real thing, trials were reversed for any error whatsoever. So I found Supreme Court cases where one guy was convicted four times, and each time the first three times came back for prosecutorial error, and then he's finally convicted the fourth time and that's affirmed. You would think if there were inherent power, it would come into play in a situation like that where at least you could argue the error was we bore some responsibility for that. Nobody bears responsibility for a hung jury. It's just something that's happened. When was that case? I can get it for you, Your Honors. But it was like 1899. It was a long time ago. And it wasn't uncommon really up until the late 60s to see a mix of, you know, reversed because of error at trial, then next one's a mistrial because of a hung jury, you know, back and forth. In fact, most of the cases, I don't think there's any that you see four trials, maybe five, and that happens when there's like a reversal and a remand back. Correct, correct. Are you relying at all on separation of powers as part of your argument? We absolutely are, yeah. So the Loving decision in 1996, the Supreme Court said that separation of powers prevents one branch from intruding on the decision-making or impairing the decision-making of another branch. In other words, impairing another branch's ability to comply with its constitutional obligations. Here, the district court is not merely impairing our ability to do that. It's actually blasting that out of the water. It's forbidding us to do this. I just don't see how in reading this court's bank statement from 2013 and when, if it's a separation of powers problem for judges to grant judicial use immunity, which this court held it was, and I think both of your honors are on that panel, I don't know how this much more drastic step wouldn't also be a separation of powers problem. And fundamentally, that's where, you know, we land on this. I would just point out, I know I'm out of time on this and I'll be back, but I just point out two unintended consequences, perhaps, if you were to find an inherent power in this case. One is, in my experience, when you prosecute cases like police brutality or excessive force, it can be very difficult to get a jury's opinion on those. You get hung juries are not that uncommon. And in my experience, district judges don't always like those cases. Are we going to be okay with district judges blowing those cases out under an exercise of this inherent power, on something of such public importance? The other implication is this. If you were to find this inherent power, now every time a district court declines to exercise that inherent power, I think that has to be an appealable final judgment. Because the defendant obviously, you know, if he goes to trial and is acquitted, he's not appealing. And if he goes to trial and is convicted, it's too late. So are we going to be okay with the delay that that would build into the process? Are we going to be okay with all of the extra work that's going to need for the court of appeals? And that's not illusory. Pennsylvania has actually had to come up with a rule to preclude or severely limit defendants' rights to take appeals following motions for, after a hung jury, following motions to bar trial on double jeopardy grounds. Now those actually have to be certified as non-frivolous. Are we ready to go that route? And you've got to take the bitter with the sweet, I think. Anyway, I'll be back. Okay, thank you. I'm sorry. Mr. Schneider, do you have any questions? No. All my questions have been asked and answered. Thank you. Okay, thank you. May it please the Court. Renee Petropalo for Appali, Vermont, right? The one thing the government said, they started off by saying, yes, there has to be a limit on the number of times that the government can retry a defendant, but those limits are only in the Constitution. That is actually undermined by Supreme Court case law, which explicitly holds that supervisory authority is an appropriate tool to remedy even those injustices that do not amount to a violation of the rules or the Constitution or statutes. And that's as recently as 2016. The court recognized it didn't have to be a violation of a rule or a statute for the court to step in and exercise its supervisory authority. They've made clear that courts have inherent supervisory authority to achieve justice in the results, and that's actually what each says in the en branche opinion from this court. They also have the inherent power to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations before the court, before the jury, excuse me. But didn't Deist also say that a court can't act contrary to a rule, statute, and constitutional provision, and couldn't one argue that by doing what happened here, the court was acting at least contrary to Rule 31 and maybe even the mandate that the executive has the authority to enforce the laws? Your Honor, I disagree. Rule 31, the Supreme Court, in answering those questions in different contexts, says it's not enough for one to touch on something. The rule has to make clear that Congress intended to supplant this inherent supervisory authority. Well, the requirement for Deist is that they may be prosecuted. They've talked about permissive language not being sufficient. How else could the court have worded it? You couldn't have a rule that required the government to bring a prosecution. So the word may have to be there. This is not the kind of a rule where you could put in language that would be obligatory. Well, the advisory committee notes actually say, with respect to this rule, that it's only intended to be a restatement of existing law. And existing law is really Perez and progeny. And Perez, the general rule before Perez was the government gets one chance to bring a case to trial. And Perez came down and said... He jumped in way back in the chain and took us back to 1828. I'm in 1824 with Perez. But since 1824, Perez, retrials were permitted. That's what the case law is. So Perez says there's no mechanical rule barring retrial under double jeopardy. It doesn't bar mechanically. But it doesn't mandate retrial either. And it doesn't speak to what other limits could be on the government's authority to endlessly retry a defendant. Well, sure, there's plenty of cases where it says the Constitution is going to operate as a limit. Your adversary can seize that. Right, exactly. And what the court did here in exercising its supervisory authority, it invoked its supervisory authority, but it was guided by constitutional principles. But it did not conclude there was a matter of constitutional magnitude that's been implicated as a result of the retrial. The court was pretty careful that it was relying on inherent authority as to the reason why it thought it needed to bring an end to this prosecution. I understand. It did not find any violations of any sort, misconduct. It was praiseworthy of both sides. I understand. In support to the Rivario decision of the United States Supreme Court, 353 U.S. 53, in that case, the government ‑‑ excuse me, the court exercised its supervisory authority to require the government to disclose the identification or the identity of a confidential informant. But that was so that the defendant could confront the evidence against them. I understand. And later cases by the Supreme Court, Phil and Selena Burnell, make clear that the exercise of the supervisory authority was guided by constitutional principles, as you just mentioned, the confrontation clause, and the defendant's right to present a defense 6th Amendment right. And that is, I submit, what the court did here. She exercised her supervisory authority guided by principles of double jeopardy, speedy trial act, and due process. Because she's saying, if you look at the language of her opinion, inherent authority to effectuate the speedy and orderly administration of justice to ensure fundamental fairness, weighing the circumstances and specific facts of this specific case, allowing a third trial risks doing a disservice to justice and potentially irreversible. The one situation, if the government waited a year, two years, three years, and then come in and say, OK, we're going to retry the case. To me, that's a very, very different scenario. But here it was a matter of weeks, and they came in and said that they're going to retry the case. Does that undermine the argument that you just made? Does that undermine the argument that you just made? I don't think so, Your Honor. She's dismissing and barring a third prosecution. One of the most significant reasons is she's recognizing in that last sentence of her opinion there could be a potentially irreversible injustice to Mr. Wright, and that is the foundation of the double jeopardy protections are that it's recognizing that the chance of conviction increases. Even though the government's evidence doesn't change, a conviction becomes less reliable. The chance of an innocent person being convicted on the same evidence increases. For all the reasons that are set forth in Arizona and Green, the government has an opportunity to hear the case, try out its case. If the court were concerned about the bona fides of the evidence, it has Rule 29. I know in both Rule 29 motions the court was quite clear that she felt the evidence was sufficient. Of course, it has to be. So if there was a concern about an innocent person, that is a person for whom the evidence did not support conviction beyond a reasonable doubt, the court has another mechanism of addressing that. So I was surprised by the statement at the end of the opinion that talks about the likelihood of conviction increases. A judge doesn't have the authority to grant a Rule 29 motion when, as in this case, the evidence is entirely one contested element in a very simple prosecution, entirely dependent on police officer credibility. So that's up to the jury to weigh the credibility. The court can't step in and do that. That sounds like Judge Rorke's point. What she's doing is recognizing a fundamental concept underlying double jeopardy and due process, and it is that there's an increased risk with each prosecution that a person, though innocent, will be convicted and it's only because. I intend to agree with you. My gut says that. Is there anything on the record to substantiate that? The last sentence of her opinion, a potentially irreversible injustice. Based on? She cites Greene. She cites Arizona. But there are a wealth of cases from the Supreme Court, Tibbs v. Florida. Did they say that? And then Stapes v. DeFrancisco. The basis of the court's opinion, Your Honor? Not the legal basis, the factual basis. What is the factual basis for the judge to have said it is a likelihood of an increase in conviction the more trials that occur? The words that she used in her last sentence are the best evidence for that. But she's throughout the opinion. Because you can make a contrary argument and say the more somebody, even assuming they're telling the truth, the more someone repeats a recounting of the same episode, the more likely it is that the tenth recounting of that is going to vary from the first, unless they're reading from a script written at the witness stand. So every time the officers testify, they're going to say something different from the way they testified before. You could argue from that that there's a greater chance of acquittal because the jury is going to be made aware of the fact that any court testimony is different from the way they told the story before. I don't think that the empirical evidence bears that out, Your Honor. We have none of that in front of us, I think, is our point. It's just studies. The Supreme Court has recognized and commentators have recognized the likelihood of conviction increases for all the reasons that we've discussed and the court discusses in the opinions in terms of the officers can subtly change their testimony. And we're not talking about lay witnesses. We're talking about professional police officer witnesses who will be reviewing the testimony before they testify the second time. That's what happened in the second trial. They actually, the government got rid of one witness who offered contradictory testimony. The government was, Officer Henson was surprised at the first trial with the mistake that he made. In the second trial, he preemptively corrects it and calls it an embarrassing misstatement. What was the thing that somebody, one of the witnesses maybe was Henson, who said that they saw somebody else, a non-officer? Yes, that was Officer Henson. And in the second trial, he preemptively tries to correct that mistake. Officer Fowler testified at the first trial, I saw Mr. Wright speeding and that's why I did the U-turn and I started chasing him. None of the other officers backed him out. In fact, they contradicted him. And at the second trial, they don't put on the opposite. I'm talking about the reason for the initial pursuit. Officer Fowler said it's because I saw him speeding, they do the U-turn and they start chasing. In the second trial, they don't call Fowler because no other officer backed that up. He was speeding later, that's uncontested, but we're talking about the initial reason for the stop. And that all goes to the defense that this man was targeted by aggressive, proactive policing in a minute away from his home. But the district court's decision wasn't based upon her appraisal of the bona fides good faith of any of the witnesses. Her opinion was based on her exercise of supervisory authority, based on and guided by principles of due process, double jeopardy, and the speed of justice. Let's talk about separation of powers. How do you get around your adversary's points concerning separation of powers? It's the executive authority to decide when, where, and how often to try someone as long as there's no misconduct, prejudice to the defendant, and their ability to defend. And so the separation of powers issue, I'd like you to speak to that if you could. I have a couple of responses. One is the government's rigid view of the separation of powers was actually rejected by the framers. They don't intend separation of powers to require absolute independence, but they have a system of checks and balances. So one branch is permitted to and required to check another branch. And, in fact, I think your adversary would concede that when he started to list out when there's a due process violation, that's when the court can step in. The idea that the Supreme Court and also this Court in Fahy either held or recognized that there is this supervisory authority and that it exists and allows courts to dismiss information or indictments in other contexts. So Fahy was a Brady violation and there had to be prejudice to the defendant in order to permit the dismissal. I understand. And, again, the reason I keep bringing that up is there always seems to be in these cases where dismissals are discussed some kind of bad conduct on the part of the prosecutor or its witnesses or prejudice. Fahy is different because they were dealing with a specific violation of a rule. There's already a body of law there that provides for a remedy to circumvent that body of law. I understand that. But Fahy stands for the proposition that a court does have supervisory authority to dismiss information in appropriate circumstances. Supreme Court has said it as well. And that sort of undermines the whole separation of powers argument. The other idea is that the government relies on I'm going to stay here briefly because I don't want to cut you off, but I've got to be somewhat mindful of the clock, more mindful than I normally would be. Oh, I apologize. I didn't make it very, very briefly. I was just going to say they rely on Nixon, but Nixon talks about there actually was one branch talking and, quote, unquote, interfering with another branch. But the question is, does it destroy that other branch's general assertion? Here they're making a general assertion of the need to prosecute gun crimes. Their right is not destroyed because they brought the case not once, but twice. They fully and fairly had an opportunity during the case to conviction twice. So there has been no destruction of the government's authority under Article II. Okay. Good morning. May it please the Court. Lawrence Estlisberg from Gibbons PC on behalf of Amicus Curiae, the National Association of Criminal Defense Lawyers. Just for all the years we've known one another, this is the first time you've ever identified me, going back 24 years. It's an amazing thing, isn't it? We've both lost our hearing. Yes, we have. But you all have got it. I really appreciate you using up some of my time. All right. Go ahead. Let me start by asking you two points. One point in particular, Mr. Cook, is a very, very good point. If any company comes out of this, it's obviously going to be under the right. And you know better than me, given your work in this area, the number of times when the government tries to try police officers for use of excessive force, the number of hung juries that come out of that. It's not insignificant. Your argument would mean that a judge will want to, after, maybe even after the first mistrial, but more likely after the second mistrial, shortly after the third mistrial, if the judge is not inclined, could cut off the prosecution. And that may be a situation of jury nullification that we don't have here. I think you've focused on exactly the question before the court, which is, is there a limit to the number of times a person can be retried over and over and over? The court, in its opinion, says under the government's theory, a person could be retried assuming no other constitutional violation as many as 50 times, and that would still be fair. Well, you did say there comes a point at which there's due process violation. Well, but let's assume for the moment no specific due process violation, that it's just a retrial over and over, that the government just keeps trying, just keeps trying to make it a little better each time. And let me just parenthetically say, as far as the empirical evidence of whether there's a greater likelihood of conviction in subsequent trials, that's not really a matter of evidence or science. It's really a matter that's been accepted by the Supreme Court in case after case after case. If you read Green, for example, one of the things that the court's concerned about in terms of the decision whether to grant the mistrial, which I'll come back to, is the question of whether, is the fact that a retrial is more likely to result in an unjust conviction. This is not me speaking. This is the United States Supreme Court. But to your point, it may be that after one trial there shouldn't be a retrial. It may be that after three, it may be after 10, after 20. What this court's job is, and you're focusing correctly on what kind of opinion ought to come out of this, there ought to be an analysis. There ought to be an analytic framework that courts can use to judge this question. And you're not writing on completely a blank slate because a number of state Supreme Courts have, of course, created just such an analytic framework. So that's what you want to do, is adopt New Jersey's multi-factor test? You know, honestly, not necessarily New Jersey's. The government makes the point that there are other factors that a court might want to consider. They point to a 12-factor test and some other 12-factor tests. I think that this is a significant enough issue that the interests of justice are sufficiently implicated in a regime where you can try somebody over and over and over, that rather than just looking at this case and saying two is not such a big deal, you go ahead and have a third one, that what the court ought to do is say, look, there's a series of factors that we ought to consider. One factor, Judge McKee, that you've talked about before is, is the evidence going to change very much? Because it does seem wrong that if the same evidence is going to be put forward over and over and over and all that we have is our government witnesses who have learned from their prior cross-examination what's likely to come before them, that it just doesn't seem right to just keep trying over and over. And I know when I say it just doesn't seem right, that sounds a little colloquial, but that kind of is what we have here. It's kind of what interests of justice are all about. It's kind of what supervisory power is all about. But here I would urge, Your Honors, as you think about this, and I have very little time, sorry, to look, and Mr. Koch has suggested this as well, at history. This case is fascinating from a historical perspective. We've talked about cases going back to 1896 and cases going back to 1824, and it really has to be fit within that framework. And the rule, as Ms. Petrie-Powell, whose name I can never pronounce, said, is also based on the history. So let's look just for a second at the rule. Let me, if I could, just talk about that history, and then I promise I'll sit down. The rule, 31b-3, it's not just, it doesn't just grant the government carte blanche to do whatever it wants. 31b-3 itself is called mistrial and retrial. The first sentence talks about the circumstances under which a district court can grant a mistrial. Whether you call it manifest necessity or whatever, that has been a subject that has puzzled the courts, and the Supreme Court in particular, for many years. Courts look at that question about whether a mistrial was appropriately granted. And in doing so, and I would urge the court to look at this court's decision in Webb and in Rousseau, and in the underlying Supreme Court decisions in Gorey and Downam and Jorn and Somerville and all the way back to Perez. One of the things that the court looks at over and over is the burden that will be placed on a defendant by a retrial. And in courts, because there are issues that arise as to whether a mistrial should have been granted. And in deciding whether a mistrial should have been granted, it looks at what the consequences of a retrial would be. Will it be more likely to result in a conviction, perhaps an unjust conviction? What's the burden? Just to read, so Webb talks about repeated attempts to convict an individual, thereby subjecting him to embarrassment, expense, and ordeal, and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent, he may be found guilty. But there the problem was that the court intervened into arguably the deliberative process and didn't let the jury finish its work. It kind of asked the question of the court person, are you guys hung yet? Completely correct. And so wasn't the real focus there is to make sure judges understood their role in the jury process? That was one of the things. So the question there was partly that. But the specific issue before the court was, was the court therefore correct in granting a mistrial? And what I'm saying is that the notion of mistrial and the notion of retrial are inextricably intertwined. And that's the only right, and historically that's so. And so that's the only right way to read Rule 31b-3, which is that the first sentence grants the right of the discretion to the district court whether to grant a retrial. That discretion is bounded. It's bounded by just these sorts of concerns. And the history of these provisions is such that one of those concerns is the issue of retrial. And so the question before this court is, are there going to be any limits other than constitutional limits, other than due process or prosecutorial misconduct, as to how many times a defendant can be tried? And respectfully, it is the NACDL's position that there are such limits, and that what this court ought to do is in order to provide guidance to future courts to impose, as other high courts, state high courts have done, a rigorous analysis. You may not agree with the specific analysis of the New Jersey Supreme Court, which was deployed by the district court here. You may not agree with the specific way that the district court engaged in that analysis here. The government certainly doesn't. But the real question is, shouldn't there be some way for lower courts to look at this? Because this is now a bit of a problem. You have a district court judge that felt it was just wrong, and she wasn't the only judge to have ever done that. There are two other district courts that she cited, one from D.C. and one from the Central District of Illinois, that have come to a similar conclusion. And so it leads, inexorably, to the notion that without offending separation of powers at all, because, after all, courts impose constraints on prosecutorial decision-making all the time, whether it's pre-indictment delay questions, not necessarily a fault, not necessarily a matter of misconduct. None of those notions are not absolute, and they should be bounded by the type of analysis that allows courts, lower courts with this court's guidance, to do what is right and fair. That's what supervisory power is for. That's the type of analysis that other courts have engaged in pursuant to their supervisory power, and that's what we request that the court do here. Let me go back to the first question I posed. There's the Goose v. Gander rule that Missouri caucus argued, and that was the scenario I first posed it to you. You didn't respond to it, and I think I understand why. But no matter what kind of analysis we have, say it's the Abadie test or one like that, which seems to be a very thoughtful analysis of the district court we relied upon out of the Supreme Court from Jersey, it's going to work both ways. So if we have the much more prevalent situation of a police officer or officers who routinely when tried, routinely, say after two tries, comes back with a mistrial based upon corruption offenses or excessive force, that same rule is going to allow a judge to say, you're not going to retry, even if we get to jury notification. It seems that, and this is not based upon irreverence, it seems like you're likely to get jury notification in that kind of scenario with some frequency, and what would prevent that jury notification from then putting it into the retrial ability? Your Honor, I don't, what is good for the Goose is good for the Gander. And I believe that if there's a rule that applies to criminal defendants, it applies to criminal defendants whether they're police officers or people like Mr. Wright who was a citizen, you know, and presumed to be innocent. The rule has to apply across the board. And what I would suggest is that the framework that this court ought to impose and ought to suggest for, not just suggest, but mandate that lower courts follow, is one that would apply to defendants across the board to assure that people aren't tried over and over and over, and thereby increasing the likelihood of an unjust conviction. But I think that Judge McKee's question might be going to something different. I misunderstand. You let me know. I think what the concern is is that a district court judge imposes its own notions of what's fair, has some particular view about police officers should have some latitude, whatever it might be from their personal point of view, and under those circumstances, one and done. You can only try it one time and you're done. How do we ensure that the personal notions of a judge don't decide when a trial can't be brought again? I think that's what the judge is asking. Okay. Thank you. I need to try to address that question directly, and what I would say is that that will turn on the analytic framework that this court imposes. I think an analytic framework like Abati, which is blind to who the defendant is, and sets forth a number of factors, how similar the evidence will be, how different it is, are meant to constrain the district court's pure use of its own preferences, its own sense of fairness. Judges should utilize their sense of fairness, that's for sure, but that has to be cabined by particular rules. Where you are today is you're essentially riding on a blank slate, because although state supreme courts have imposed a set of rules that can constrain district court's sense of fairness, this court hasn't done that, nor has really any other court of appeals in the federal system. The Tenth Circuit at one point said we know that there's a point at which it would be too much, but we're not there yet, it said in a case that's cited in the papers. But the real question is when would you get there? And when you get there is the kind of thing that needs to be dictated based upon a rigorous analytic framework. The New Jersey Supreme Court did that in Abati. The Hawaii Supreme Court has done it. The Tennessee Supreme Court has done it. Other states have specific rules that set it forth. This rule, because of its history and because of the combination of the discretion accorded to district courts to grant a mistrial and the basis for that, which includes thinking about what a retrial would be, has left it for district judges when they feel that there's an injustice, at least arguably, to impose a remedy. And what that remedy ought to be should be dictated by this court's framework. Thank you. Thank you. Judge, are there any questions? No, thank you. Okay, thank you. Okay, just to take these in the order in which I remember them, this court in Moravian School Authority in 1994 decision, Judge Nygaard's, I believe, said consistent with Bank of Nova Scotia, consistent with Chambers, Carlisle, that supervisory authority can't, in Judge Nygaard's case, I think the phrase he used was, be inconsistent with a rule. In this case, it's clear this is inconsistent with Rule 31. On to the issue of whether the district court was correct in citing green, and none of this is meant in denigration of the district court. This is one of the best judges we have in my district. He's decisive and smart. The problem is when the judge cited green, and it's a very juicy quotation, when you read the sentence right before it, the Supreme Court says, in effect, double jeopardy precludes retrying someone for the same crime after they've been acquitted or convicted. The third category is hung jury, and that's never mentioned. So I think to say there's a double jeopardy violation in principle is like saying someone could be pregnant in principle. There either is a violation or there is not. The body test that the defendants, I'm sorry, the appellees, seem to be a little cagey about what test the court should adopt, if any. It's our position the court should adopt a test because this power doesn't exist. But if it did, a body wouldn't be the right one, and neither would the test prescribed by most of these states, which vary. They're like 6 to 12. So what's wrong with a body? So for one thing, the very first factor in the body is the breakdown of the jury as far as is known. Well, the problem is you'll never get reliable information on that in a federal court because the Supreme Court in Blassfield v. United States in 1926, I think, held that it is per se error for a court to ask a jury on the cusp of a deadlock what its breakdown is. Right, and the court here was mindful of that. She didn't want to get into it. Correct. But we've got the unofficial because the court never accepted it as being pregnant. Basically, we know what the problem was. But here's the problem, Your Honor, is that the court discharges the jury in every trial I've ever been involved. It says you're free to stick around and talk to the attorneys if you want, but you don't have to. In my experience, it's unusual for all attorneys to stick around. But more than that, That's the fact that it just doesn't go one way or the other in a body. In effect, it cuts against us because it's our ox that's being gored, Your Honor. We want to do a retrial, and I think the way the court weighed this factor, the only way it could ever favor us is if everyone agreed, if defense and the prosecution agreed, the jury came back some overwhelming number in favor of conviction. And there's just no way of ensuring agreement on that. So that's the problem we have with that factor. And then the other one as far as whether the evidence is going to be different in another trial, we don't entirely agree with the court's finding, if you could call it that, that the evidence would be the same. Because one thing that, and Mr. Adepogi was trial counsel, but one thing that trial counsel was permitted to do, and it's in part our fault because we didn't object, but he was permitted to insinuate through these hypothetical questions that the gun might have been planted on Mr. Wright. Well, Mr. Wright never put on a case in either trial, never testified in either trial. There's not a shred of evidence that the gun was planted. How else, he clearly does not have to testify. How else would you suggest that to the jury? How would you get that thought into the jury's mind except for skewing cross-examination with police officers and using a suggestion to insinuate an argument? Well, I think you're right. That's correct. But, I mean, you should have drawn objections for facts not in evidence, that kind of thing. I mean, I think the problem is it was allowed to go uncontradicted so that by the time closing argument rolls around, that's an important facet of the defendant's theory. I have no problem with this stuff coming in. If there's any evidence at all, if you can get... You've made an excellent argument and made some very good points. At least to my way of thinking, this is not one of them. Because there will never be any way of getting bad evidence unless you get one of the police officers to quote Green Road. And that's almost never going to happen. It's got to be through cross-examination, drinking, insistencies, the window. And it may not be fair, but it's clearly kosher than the rules of evidence. Well, I don't know that it is if it's a fact not in evidence. So we can agree to disagree on that or whatever. But I think at the very least we'll be more mindful of watching those kinds of questions. That's all. I mean, we have questions that are inviting some... Because it's almost like a nullification sort of theory. But even go to the threshold question before that, for a district court even to ask us how we expect our evidence to be different in another trial, the problem I have with that is you're almost intruding on the deliberative process. And we have a deliberative process privilege where we're not required, as far as I know, to give an offer of proof before we try anybody. I mean, we have to have an indictment that's sufficient. And in order to get to a jury, we have to offer evidence that's sufficient. The court ruled that we did. But it's not uncommon for a safe or given witness. We imagine many, many cases going on as a trial judge. It wouldn't be uncommon to be a defense witness or a prosecution witness. When someone is called and you've got concerns about what the witness is going to say, you go to sidebar and you say, I want to offer proof. What do you expect to get out of this witness? Yeah, and that may be the case if it's unclear. But at this point, I mean, the district court wants an offer of proof about the entire trial. And now I'm not saying, you know, I think if there was a privilege here, it was waived because we responded to that in our pleadings. I'm just pointing it out as a potential problem down the road with whatever standard, Your Honor, if you decided to go this route and you decided to adopt a standard, that's a problem, I think. But the overarching problem I have with the entire Abadi standard is you've got to remember, New Jersey is a prerogative-lit jurisdiction. It's the only one I was able to find still in the United States. It hasn't been since its constitution in 1947. And what that means is, and this is cited in Abadi. It cites a Supreme Court case from Jersey called In Re Ringwood. And what that means, if you read Ringwood, is that New Jersey courts have much more leeway to second-guess prosecutorial decisions. They can throw out a prosecutor's decision if it's deemed arbitrary or even abusive. That's not the case in the federal system because federal courts view separation of powers. I understand there's some permeability there, but they view separation of powers differently. The last thought I'm going to leave you with since I'm done is that, I mean, I think the way to conceptualize inherent supervisory powers, it's kind of the dark energy of the judicial cosmos. It exists every place where there isn't already some other rule. It can coexist in other areas that are covered by rule or constitutional legislations, provided it doesn't co-opt that. And I think that's our basic problem here, is that the district court has essentially reached into an area that's reserved to us through Article II. The U.S. attorney in my district is required to make this decision under 28 U.S.C. 547, and the district court has vetoed it based on her notions that it's fair to do so. There may be some point down the line where constitutionally it won't be fair to try this man again or any person a certain number of times. And I can't give your honors a number, because it depends. But it's our view that this is not the case. Mr. Westbrook, your response, I'm sure you're thinking this mentally, depends on what? Tell us. Well, it could depend on a number of things. I mean, so this would be asking me to come up with a test that the appellees should have come up with. I don't know the answer. I mean, one thing that jumps out is, you know, if you had a trial in length of, say, a Microsoft-type trial, and those take like 18 months, maybe two, three, four of those get to be problematic. Isn't it ironic, though, the district court here found this short trial to be one that was too short, so we shouldn't retry it? You've just said a trial could be too long, so we shouldn't retry it. Right. But I gather what you're saying in that circumstance is if it's too long, that means now judicial resources are being used, not just prosecutorial ones and defense ones. Is that where you're going with that? Yeah, it could be. I mean, part of that, if Your Honors, you've read the briefing very carefully, which I know you did, but the way the district court weighed some of the factors, it was sort of a damned if you do, damned if you don't for the government. And I think that was an instance where I think that factor should have cut in our favor, and instead, when you do the conclusion, it doesn't. So for those reasons, we would ask that the court reverse. Do I have any questions? No, if I may. Thank you very much. Transfer to the case. Notations that you can check with this show. Go to the details. Thank you very much.